IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:14-CV-887-F

PAMELA BRAGG, )
)
       Plaintiff, )
)
vs. ) **ORDER**
)
BOARD OF GOVERNORS OF THE )
UNIVERSITY OF NORTH CAROLINA )
CONSTITUENT N.C. STATE )
UNIVERSITY AT RALEIGH, )
)
       Defendant. )
_____ )

Before the court is Defendant's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. [DE 41]. Plaintiff responded and Defendant replied. [DEs 47, 49]. For the reasons stated below, Defendant's motion is allowed.

## I.    BACKGROUND

Plaintiff, who is black, brings this race-based discrimination case against her former employer, North Carolina State University ("NC State"), for a purported violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*. Specifically, Plaintiff alleges a claim of disparate pay for equal work. According to Plaintiff, she was paid less than Angela Nicholson and Julia Willoughby, both of whom are white.

On February 18, 2013, Plaintiff filed a formal charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").[1] The EEOC mailed a "Dismissal and Notice

---

[1]    A plaintiff must bring a charge with the EEOC by filing a complaint within 180 days of the incident. 42 U.S.C. § 2000e-5(e)(1); *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002). Based on Plaintiff's filing date, the alleged discriminatory acts occurred on or after August 22, 2012. *See* Pl.'s Resp. at 6 ("Defendant states, and Plaintiff concurs, that any allegations of discriminatory acts that precede [August 22, 2012] should be

of Rights" form (a right-to-sue notice) to Plaintiff on September 24, 2014. [DE 1-1]. Plaintiff timely initiated this action on December 16, 2014.[2]

## II. SCOPE OF THE EVIDENTIARY RECORD

Before the court can summarize the facts in this case, it must determine the scope of the evidentiary record.

In support of the instant motion, Defendant submitted the following materials: (1) sworn affidavit by Barbara L. Carroll, Associate Vice Chancellor for Human Resources[3] ("HR") at North Carolina State University ("NC State") [DE 43-1]; (2) sworn affidavit by Deborah M. Wright, Director of the HR Classification and Compensation unit and Plaintiff's supervisor throughout Plaintiff's employment at NC State [DE 43-2]; (3) excerpts of Plaintiff's deposition taken January 26, 2016 [DE 43-3]; and (4) a two-page excerpt from Plaintiff's response to Defendant's requests for admission [DE 43-4]. The sworn affidavits and admissions are proper summary judgment evidence. *See* FED. R. CIV. P. 56(c)(1)(A) (identifying depositions, affidavits and admissions as proper evidentiary materials). Defendant also provided a statement of material facts ("SOF") pursuant to Local Civil Rule 56.1, which is supported by the above materials.

Plaintiff, however, failed to present any evidence in the form of testimony, affidavits, or otherwise. Rather, Plaintiff relies only on the allegations contained in her unverified complaint, as supplemented by additional allegations found in or based on the following exhibits attached to Plaintiff's response: (1) an April 27, 2014 email from Plaintiff to Tammy Tompkins, Lead Civil

---

disregarded by the Court.").

[2] Title VII provides that a complainant has 90 days from the receipt of a right-to-sue notice to file an action in court. 42 U.S.C. § 2000e-5(f)(l).

[3] Identification of professional titles and tasks is limited to Plaintiff's term of employment at NC State, which ended June 30, 2013.

Rights Investigator for the North Carolina Office of Administrative Hearings [DE 48-3 at 8-14]; (2) an April 28, 2014 email from Plaintiff to Tompkins, *id.* at 2-7; (3) a document titled "New Position Description: Classification and Compensation Consultant (SPA)," *id.* at 15-27; (4) a memorandum dated October 22, 2012 from Warwick Arden, Provost and Executive Vice Chancellor to "Vice Chancellors, Deans, Vice Provosts, and Associate Vice Chancellors" regarding "2012 SPA Salary Adjustments Beyond 1.2%," *id.* at 28-29; and (5) a July 1, 2014 email from Plaintiff to Lamont Goins, Director, North Carolina Office of Administrative Hearings, *id.* at 30.[4]

The allegations of an unverified complaint cannot be used to demonstrate a genuine issue of fact in opposing summary judgment. *Askins v. Belissary*, No. 4:12-cv-1856-RBH, 2014 U.S. Dist. LEXIS 14783, at *18 (D.S.C. Feb. 6, 2014) ("[T]he law is clear that a plaintiff cannot rely on an unverified complaint in opposing a motion for summary judgment."). However, Rule 56(c)(1)(A) provides a court may consider "admissions" in reviewing a motion for summary judgment," such as facts in the complaint that the [d]efendant admits in its pleadings." *Hughes v. Dollar Gen.*, No. 1:14-cv-148, 2015 U.S. Dist. LEXIS 35659, at *3 n.3 (M.D.N.C. Mar. 23, 2015) (citing *Mo. Hous. Dev. Comm'n v. Brice*, 919 F.2d 1306, 1314 (8th Cir. 1990)). Accordingly, the court includes as facts the pertinent admissions by Defendant in its first amended answer [DE 30].

As for the exhibits attached to Plaintiff's response, material need not be in an admissible form at summary judgment stage, despite Defendant's argument to the contrary.[5] Rather, a party

---

[4] These exhibits also accompany Plaintiff's SOF. *See* [DE 46].

[5] *See* Def.'s Reply at 2 (erroneously claiming unauthenticated evidence cannot be considered by the court in its Rule 56 review and relying on a case pre-dating the 2010 amendment to Rule 56).

must identify materials that can be presented "in a form that *would be* admissible in evidence." FED. R. CIV. P. 56(c)(2) (emphasis added); *cf. Whittaker v. Morgan State Univ.*, 524 F. App'x 58, 60 (4th Cir. 2013) (upholding district court's decision to exclude letter submitted by plaintiff where plaintiff "admit[ted] that he would have difficulty . . . presenting the letter or its contents 'in a form that would be admissible in evidence'") (quoting FED. R. CIV. P. 56(c)(2)); *Pronin v. Vining*, No. 5:13-cv-03423-DCN, 2016 U.S. Dist. LEXIS 43418, at *12 (D.S.C. Mar. 31, 2016) (noting "the objection [now] contemplated by the amended Rule is not that the material 'has not' been submitted in admissible form, but that it 'cannot' be" (alteration in original)).

Turning to Plaintiff's emails, the court finds the relevant content therein[6] cannot be presented in an admissible form because it is conclusory, is not based on personal knowledge or constitutes hearsay.[7] *See Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996) (explaining affidavits must "contain admissible evidence and be based on personal knowledge" and "cannot be conclusory . . . or based upon hearsay"); *accord Whittaker v. Morgan State Univ.*, 524 Fed. App'x 58, 60 (4th Cir. 2013). As for the position description, it could be reduced to admissible form if accompanied by an affidavit from the custodian of the record to authenticate it and establish that it was kept in the course of regular business. *See* FED. R. EVID. 803(6). Finally, the affidavits of Carroll and Wright – provided in support of Defendant's motion – both discuss and include the October 2012 memorandum and thus constitute evidence the court may consider in deciding the instant motion.

---

[6] The three emails include information immaterial to this matter. For example, Plaintiff identifies other individuals outside her protected class; however, these individuals were not identified in her complaint. Plaintiff also discusses conversations or events predating the relevant time period, including an allegation that Carroll was "involved in another adjudicated charge of racial discrimination at the University of Georgia." [DE 48-3 at 4].

[7] For example, in her April 28, 2014 email, Plaintiff alleged that at some point, Wright stated, "Black people just don't know how to act right sometimes." [DE 48-3 at 5].

### III. STATEMENT OF FACTS

Based on the evidence before the court, the undisputed facts giving rise to this claim – stated in the light most favorable to Plaintiff – are as follows.[8]

Plaintiff worked for NC State in its Human Resources ("HR") department from 1986 until her retirement in 2013. Aff. Deborah M. Wright ("Wright Aff.") ¶ 4 [DE 43-2].[9] At all relevant times, Plaintiff – along with Julia Willoughby and Angela Nicholson – served as HR consultants in the Classification and Compensation Unit ("the Unit") and Deborah Wright, who is black, served as supervisor of the Unit. Wright Aff. ¶¶ 2, 6; 1st Am. Answer ¶ 17. Wright reported to Barbara Carroll, who served as Associate Vice Chancellor for Human Resources and is white. Wright Aff. ¶¶ 3-4; 1st Am. Answer ¶ 18; Aff. Barbara L. Carroll ("Carroll Aff.") ¶ 3 [DE 43-1].

In 2010, the positions of Plaintiff, Willoughby and Nicholson were classified as HR Consultant-Journey. Wright Aff. ¶ 6. Effective June 1, 2010, Wright reclassified Nicholson's position "from Journey to Advanced" following Nicholson's completion of various training opportunities regarding compensation analysis. Wright Aff. ¶ 6. That same year, Plaintiff met with Carroll regarding the possibility of a position level change and a salary increase. Pl.'s Dep. at 18:13-25; Carroll Aff. ¶ 5. In response, Carroll encouraged Plaintiff to seek training regarding the "quantitative aspects of compensation analysis." Carroll Aff. ¶ 5. Ultimately, Plaintiff completed one compensation course and an unspecified number of free courses offered by the Office of State Personnel. Pl.'s Dep. at 19:12-23; 20:1-9. Plaintiff informed Wright of her

---

[8] *See Tolan v. Cotton*, __U.S.__, 134 S. Ct. 1861, 1863 (2014) (explaining that in ruling on a motion for summary judgment, the court must set forth the facts in the light most favorable to the non-movant).

[9] While an employee at NC State, Plaintiff received multiple promotions, position level changes and salary increases by Wright. Wright Aff. ¶¶ 4-5; Pl.'s Dep. at 14:23-25, 15:1-6 [DE 43-3].

completion of this additional coursework. Pl.'s Dep. at 20:12-14.

At the start of 2012, Plaintiff (Journey level), Willoughby (Journey level) and Nicholson (Advanced level) earned $62,834.00, $60,000.00 and $68,483.00, respectively. Carroll Aff. Exs. 1, 4-5 [DE 43-1 at 6, 15, 18]. At that time, Nicholson's salary included a temporary supplement. Carroll Aff. Ex. 1 [DE 43-1 at 6].

Sometime in early 2012, Wright advised Plaintiff that NC State was creating a new HR Consultant-Advanced position and encouraged Plaintiff to apply.[10] Pl.'s Dep. at 22:7-12; Wright Aff. ¶ 8. The new position was posted in April 2012. Wright Aff. ¶ 9. Plaintiff did not apply for it; however, Willoughby did. Pl.'s Dep. at 26:7-9; Wright Aff. ¶¶ 9-10; Carroll Aff. ¶ 7. Willoughby was ultimately chosen for the position and in June 2012, her salary increased to $64,000.00. Wright Aff. Ex. 6 [DE 43-2 at 19]; Carroll Aff. Ex. 4 [DE 43-1 at 15].

As of July 1, 2012, Plaintiff, Willoughby and Nicholson earned $63,588.00, $64,768.00 and $69,305.00, respectively. Carroll Aff. Exs. 1, 4-5 [DE 43-1 at 6, 15, 18] (explaining each received a "legislative increase" to their salaries). On December 1, 2012, Plaintiff's position was elevated from the Journey to the Advanced level with a corresponding salary increase to $66,000.00. Wright Aff. ¶ 11; Carroll Aff. ¶ 8; Carroll Aff. Ex. 5 [DE 43-1 at 19]. That same day, Willoughby received a "market" adjustment, resulting in a new salary of $68,768.00. Carroll Aff. Ex. 4 [DE 43-1 at 15]. On January 1, 2013, Nicholson's salary supplement was removed, reducing her salary to $63,004.00, but then readjusted to $69,000.00 pursuant to a "market" adjustment.[11] Carroll Aff. Ex. 1 [DE 43-1 at 7].

---

[10] Prior to the creation of the new position, Wright initially advised during a staff meeting that the positions of Plaintiff and Willoughby would be reclassified from the Journey to the Advanced level "subject to considerations and departmental restrictions." Wright Aff. ¶ 7; Pl.'s Dep. 20 at 18-25, 21:6-21.

[11] The salary increases of Willoughby and Nicholson were "coded . . . as 'market' adjustments pursuant to the guidance issued in a memorandum dated October 22, 2012 issued by the Provost and the Vice Chancellor for

The salary increases received by Willoughby and Nicholson "reflect[ed] the additional and more complex duties they were managing." Wright Aff. ¶ 12; Carroll Aff. ¶ 9. Moreover, neither increase was funded by the HR department. Willoughby's salary increase "was voluntarily funded by" Business Operations at the request and recommendation of its director, Scott Inkley, "because he considered [Willoughby's] contributions and effort dedicated to the [Shared Business Operations] initiative to be particularly valuable." Carroll Aff. ¶ 9; *accord* Wright Aff. ¶ 12. Nicholson's salary increase "was funded through the Vice Chancellor for Finance & Business to compensate [Nicholson] for her role as the Classification & Compensation unit's technical expert for the two IT data management systems (PeopleSoft and PeopleAdmin 7) used at NC State." Wright Aff. ¶ 12; *accord* Carroll Aff. ¶ 9.

Plaintiff voluntarily retired from NC State on June 30, 2013. Pl.'s Dep. at 26:17-19.

## IV. LEGAL STANDARD

Summary judgment is appropriate where an examination of the pleadings, affidavits and other proper discovery materials before the court demonstrates "there is no genuine dispute as to any material fact," thus entitling the moving party to judgment as a matter of law. FED. R. CIV. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (explaining "irrelevant or unnecessary" factual disputes do not preclude summary judgment). A factual dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In considering a motion for summary judgment, a court may not make credibility determinations or engage in any weighing

---

Finance and Business." Wright Aff. ¶ 12; Carroll Aff. ¶ 9. "The memo indicated that market adjustments could be processed without prior review by Human Resources where an individual's current salary was below the market reference rate for the position's career band and level." Wright Aff. ¶ 12; Carroll Aff. ¶ 9.

of the evidence. Rather, "the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor." *News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010) (quoting *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999)).

The movant has the initial burden of showing no genuine issue of material fact exists. *Celotex Corp.*, 477 U.S. at 324. The movant discharges her burden by identifying an absence of evidence to support the non-moving party's case. The non-moving party then must identify specific facts showing there is a genuine issue for trial. *Id.* at 323. In this regard, the non-moving party must convince the court that evidence exists upon which a finder of fact could properly return a verdict in favor of the non-moving party. To meet this burden, the non-movant may not rest on the pleadings, but must designate specific facts in the record – by providing depositions, affidavits, and other competent evidence – establishing a genuine issue of material fact exists. *Id.* at 325. Conclusory allegations, speculation, and unsubstantiated assertions do not suffice. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002); *see Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006) ("[S]ummary judgment is essentially 'put up or shut up' time for the nonmoving party: the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument."). If the non-movant fails to meet her burden, summary judgment must be granted. *Celotex*, 477 U.S. at 322.

## V.   DISCUSSION

Defendant seeks summary judgment, arguing Plaintiff's claim of wage-based discrimination fails as a matter of law on the undisputed facts.

Title VII prohibits, *inter alia*, an employer from discriminating against an individual with respect to compensation because of her race. 42 U.S.C. § 2000e–2(a)(1). "The ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 135 (2000). A plaintiff can establish discrimination under Title VII "through direct and indirect evidence" (i.e., the "mixed-motive" framework) or through the burden-shifting framework of *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973) (i.e., the "pretext" framework). *Foster v. Univ. of Maryland-E. Shore*, 787 F.3d 243, 249 (4th Cir. 2015). Here, the court considers Plaintiff's unequal pay claim under the pretext framework.[12] *See* Compl. ¶ 57 (citing "the *McDonnell Douglas* burden shifting test").

In proceeding under the pretext framework, the plaintiff must first make out a *prima facie* case of pay discrimination under Title VII. Although the precise formulation of the required *prima facie* showing will vary in "differing factual situations," *McDonnell Douglas*, 411 U.S. at 802 n.13, the plaintiff in an employment discrimination suit generally must show the employer took adverse action against the plaintiff "under circumstances which give rise to an inference of unlawful discrimination." *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

---

[12]   Under the "mixed-motive" framework, a plaintiff succeeds if she "demonstrates that [a protected characteristic] . . . was a motivating factor for any employment practice, even though other factors also motivated the practice." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 317 (4th Cir. 2005) (internal quotation marks omitted). This evidence must display a "discriminatory attitude" and bear a causal relationship with the adverse employment action. *Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 520 (4th Cir. 2006). Plaintiff has made no such showing here.

If the plaintiff establishes a *prima facie* case, the burden then shifts to the defendant to produce a legitimate, nondiscriminatory reason for its actions against the plaintiff. *Id.* at 253-55 (explaining this is a burden of production, not persuasion). If the defendant meets this burden, the plaintiff must then prove, by a preponderance of evidence, "that the proffered reason was not the true reason for the employment decision," and that the plaintiff "has been the victim of intentional discrimination." *Id.* at 256.

In an effort to state her claim for unequal pay, Plaintiff compares her salary as of late 2012 and early 2013 ($66,000.00) to that of Willoughby ($68,768.00) and Nicholson ($69,000.00) during the same time period. *See* Pl.'s Resp. at 6 (identifying the "relevant compensation actions" as the "labor market increases" given to Willoughby and Nicholson in December 2012 and January 2013, respectively).

To establish a *prima facie* case of wage discrimination, the plaintiff must show that she (1) "is a member of a protected class"; (2) "was paid less than an employee outside the class" and (3) "the higher paid employee was performing a substantially similar job." *Kess v. Mun. Emps. Credit Union of Balt., Inc.*, 319 F. Supp. 2d 637, 644 (D. Md. 2004); *see Siraj v. Hermitage in N. Va.*, 51 Fed. App'x 102, 112-13 (4th Cir. 2002) (stating this claim requires a plaintiff show that (1) "she is a member of a protected class" and (2) "the job she occupied was similar to higher paying jobs occupied by employees outside the protected class"); *Kalm v. Dalton*, No. 7:96-CV-216-BR(2), 1997 U.S. Dist. LEXIS 8573, at *17 (E.D.N.C. May 20, 1997) ("To establish this claim, plaintiff must demonstrate that she was performing work substantially equal to that of [non-protected] employees who were compensated at higher rates than she was."). It is undisputed that Plaintiff satisfied her burden under the first two elements. The disputed issue on this claim is whether Plaintiff has presented appropriate comparators for her *prima facie* case.

"The similarity between comparators . . . must be clearly established in order to be meaningful." *Lightner v. City of Wilmington*, 545 F.3d 260, 265 (4th Cir. 2008). The comparators upon whom the plaintiff relies must be similarly situated "in all relevant respects." *Woodward v. UPS*, 306 F. Supp. 2d 567, 575 (D.S.C. 2004). Accordingly, "[t]he appropriate factors to consider in a discriminatory compensation claim include whether the [p]laintiff and those who she claims are similarly situated had the same or substantially similar experience, education, duties, and qualifications." *Romeo v. APS Healthcare Bethesda*, 876 F. Supp. 2d 577, 592 (D. Md. 2012); *accord Siraj*, 51 Fed. App'x at 113 (stating individuals "are similarly situated if their job requirements are similar in the level of competency, education, and requirements").

As evidentiary support for the third element, Plaintiff relies on the "New Position Description: Classification and Compensation Consultant (SPA)," and in particular, the following November 8, 2012 notation therein by Wright:

> A request, as the Director of Class & Comp, is being made to bring this [i.e., Plaintiff's] Consultant position to Advanced in line with two other Advanced Consultant positions in the unit. These three positions function with different specialty areas. However, the overall role and responsibilities for performing complex analysis, in addition to the consultation provided to campus are comparaabl[sic].
> . . .
>
> This position is comparable to other Human Resources Consultant positions at the Advanced level in the Classification and Compensation . . . Department[]. The position is comparable in terms of advanced level competencies of professional knowledge and expertise, consultation, and program/project management.

[DE 48-3 at 27]. Though this evidence indicates that Plaintiff and her comparators shared the same job title, supervisor and a number of similarities in their employment, relevant differences distinguish Plaintiff's pay level, such that her circumstances were not "substantially similar" to Nicholson or Willoughby.

As to Nicholson, the evidence indicates Nicholson performed at the Advanced level since June 2010 upon (1) assumption of "additional duties," Wright Aff. ¶ 6, and (2) demonstration of an "expert role in compensation analysis [and] classification work." Carroll Aff. ¶ 4. At that time, however, Plaintiff lacked the necessary compensation analysis skills. Pl.'s Dep. at 18:18-25, 19:1-4 (stating Carroll advised her to obtain additional skills and suggested taking "compensation courses"). While Plaintiff ultimately completed one compensation course and an unspecified number of free courses, Nicholson nevertheless accrued more experience in the position and possessed stronger compensation analysis skills. *See* Carroll Aff. ¶ 8 (stating as of December 2012, Plaintiff "still did not demonstrate significant competencies in the compensation area"). These salient differences render Nicholson an inappropriate comparator for Plaintiff's disparate-pay claim.

Turning to Willoughby, it is undisputed that at the start of 2012, Plaintiff and Willoughby were both classified at the Journey level with Plaintiff earning a higher salary. Thereafter, HR posted a new Advanced level for which Willoughby applied but Plaintiff did not. In June 2012, Willoughby was awarded the position and as a result, was paid at a higher rate than Plaintiff. While Plaintiff's position was ultimately reclassified as Advanced level in December 2012, by that time, Willoughby had assumed the responsibilities of that position almost six months prior. Moreover, Plaintiff does not dispute Carroll's assessment that as of December 2012, Plaintiff continued to lack significant skills regarding compensation analysis – a skill set possessed by Willoughby. Without any evidence to contradict this, Willoughby is also not an appropriate comparator.

In sum, based on the totality of the evidence, the court finds Plaintiff fails to demonstrate that she was treated less favorably than similarly situated white employees. Plaintiff's failure to establish a *prima facie* case of discrimination under Title VII ends this court's inquiry and the burden never shifts to Defendant. Accordingly, Defendant is entitled to summary judgment on Plaintiff's unequal pay discrimination claim.

## VI. CONCLUSION

For the reasons provided herein, it is ORDERED as follows:

1. Defendant's Motion for Summary Judgment [DE 41] is ALLOWED;

2. Defendant's Motion for Judgment on the Pleadings [DE 31] is DENIED AS MOOT; and

3. The Clerk of Court is DIRECTED to close this case.

SO ORDERED.

This the 25th day of January, 2017.

**JAMES C. FOX**
Senior United States District Judge